**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **CONTOUR IP HOLDING, LLC** | |
| *Plaintiff*, | **Case No. 4:25-cv-1369** |
| **v.** | |
| **ARASHI VISION INC., D/B/A INSTA360** | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

## DEFENDANT INSTA360'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM

**Table of Contents**

I.    BACKGROUND ................................................................................................... 1

    A.    The '954 Patent and Its Litigation History .................................................... 2

    B.    The '983 Patent ............................................................................................... 3

II.    LEGAL STANDARDS ...................................................................................... 5

    A.    Patent Eligibility ............................................................................................ 5

    B.    Motion to Dismiss........................................................................................... 6

III.    ARGUMENT....................................................................................................... 7

    A.    Count I Should Be Dismissed Because Claim 11 of the '954 Patent Is Invalid and Contour Is Estopped from Relitigating It........................................................ 7

    B.    Count II Should Be Dismissed Because Claim 1 of the '983 Patent Is Directed to Patent-Ineligible Subject Matter ................................................................... 8

        1.    Claim 1 Is Representative of the '983 Patent Allegations ..................................... 8

        2.    Claim 1 Is Directed to the Abstract Idea of Collecting, Combining, Synchronizing, Storing, and Providing Access to Information ............................ 9

        3.    Claim 1 Lacks an Inventive Concept ................................................................. 11

        4.    Contour's Expected Responses Do Not Save Claim 1 ........................................ 14

        5.    The Remaining Claims of the '983 Patent Are Also Abstract and Lack an Inventive Concept ................................................................................................ 17

    C.    No Claim Construction Is Needed ................................................................ 20

    D.    Amendment Would Be Futile ....................................................................... 20

IV. CONCLUSION.................................................................................................... 21

ii

**Table of Authorities**

**CASE**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018)................. 6

*Alamance Indus., Inc. v. Gold Medal Hosiery Co.*, 194 F. Supp. 538 (S.D.N.Y. 1961) ................ 7

*Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014)........................... 2, 5, 6, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 5, 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................................ 6

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971).... 1

*Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359 (Fed. Cir. 2024) ........................ passim

*BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) .......................................... 14

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343
   (Fed. Cir. 2014)......................................................................................................................... 20

*Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373 (Fed. Cir. 2024) ................................. 16

*Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359 (Fed. Cir. 2020)....................... 5

*Deposit Bank v. Bd. of Councilmen of City of Frankfort*, 191 U.S. 499 (1903) ............................ 7

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir.
   2014) ........................................................................................................................................... 9

*Dimare Fresh, Inc. v. United States*, 808 F.3d 1301 (Fed. Cir. 2015)........................................... 6

*Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016)................................ 9

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002)........ 20

*Hoganas A.B. v. Dresser Indus.*, 9 F.3d 948 (Fed. Cir. 1993)........................................................ 5

*IBM Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371 (Fed. Cir. 2022)..................................................... 6

*In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607 (Fed. Cir. 2016)........................... 9, 15

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332 (Fed. Cir. 2017)............................ 6

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) ................................... 6

*OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) ......................................... 4

*Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*, No. 4:20-CV-448-SDJ, 2021 WL 1196271

    (E.D. Tex. Mar. 30, 2021)...................................................................................................... 8, 13

*SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365 (Fed. Cir. 1983) .............................. 7

*TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020) ........................................................... 5

*Tiare Tech., Inc. v. Whataburger Restaurants, LLC*, No. 2:22-CV-0182-JRG-RSP, 2023 WL

    2733348 (E.D. Tex. Mar. 15, 2023)........................................................................................ 16

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329 (Fed. Cir. 2017) .... 9, 16

*Yu v. Apple Inc.*, 1 F.4th 1040 (Fed. Cir. 2021) ...................................................................... 11, 15

## STATUTE

35 U.S.C. § 101.............................................................................................................................. 2

## RULE

Fed. R. Civ. P. 12(b)(6)................................................................................................................. 6

Fed. R. Evid. 201 ....................................................................................................................... 2, 5

## I.    BACKGROUND

Asserting an invalid patent and an ineligible patent, Plaintiff Contour IP Holding, LLC ("Contour") alleges that Defendant Arashi Vision Inc., d/b/a Insta360 ("Insta360") infringes two patents.  Specifically, the Complaint asserts two patent infringement counts. Count I asserts infringement of claim 11 of U.S. Patent No. 8,890,954 (the "'954 patent"). Count II asserts infringement of claim 1 of U.S. Patent No. 12,206,983 (the "'983 patent"). Compl. ¶¶ 10-15, 64-83.  The Complaint alleges that Contour owns the '954 and '983 patents. Compl. ¶¶ 10, 13. It identifies claim 11 as the representative claim asserted from the '954 patent, and claim 1 as the representative claim asserted from the '983 patent. Id. ¶¶ 10-15. The infringement counts then allege infringement of "at least claim 11" of the '954 patent and "at least claim 1" of the '983 patent. Id. ¶¶ 65-83.

Insta360 moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint because both counts fail as a matter of law. First, claim 11 of the '954 patent has already been adjudicated invalid. On June 1, 2026, the Northern District of California entered final judgment in *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-cv-04738-WHO, expressly determining that "GoPro is entitled to judgment as a matter of law that Claim 11 of the '954 Patent is invalid as obvious." Ex. B at 4. Contour filed a notice of appeal on July 1, 2026, but the pending appeal does not defeat the finality or preclusive effect of that judgment. Under *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971), Contour cannot relitigate the validity of the same patent claim against a new accused infringer after a full and fair opportunity to litigate validity in the first case.

Second, claim 1 of the '983 patent is directed to the abstract idea of collecting two types of information, organizing them together, synchronizing them, storing/transmitting them, and making them available for access. The claim recites conventional camera and computer-network

1

components, including a lens, image sensor, non-audio sensor, wireless connection device, processor, encoder, and memory, performing their ordinary functions at a high level of generality. The claim does not recite any specific improvement to camera hardware, video encoding, memory architecture, wireless transmission, synchronization technology, or media-server operation.  In essence, the '983 patent claims encompass an abstract idea of data management camouflaged by the recitation of a conventional digital camera. It is therefore patent-ineligible under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014).

A.      **The '954 Patent and Its Litigation History**

The Complaint alleges that Contour owns U.S. Patent No. 8,890,954, titled "Portable Digital Video Camera Configured for Remote Image Acquisition Control and Viewing." Compl. ¶ 10. The Complaint identifies claim 11 as representative and asserts infringement of "at least claim 11." *Id.* ¶¶ 10-12, 65-73. In general terms, claim 11 concerns a portable point-of-view digital video camera that generates video streams of different quality, wirelessly sends a lower-quality stream to a personal portable computing device for display, receives control signals from that device, and adjusts camera settings based on those control signals. *Id.* ¶ 11.

The '954 patent, including claim 11, has been heavily litigated in *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-cv-04738-WHO (N.D. Cal.), the Northern District of California action that followed transfer of Contour's earlier case in 2017. Insta360 respectfully requests that the Court take judicial notice under Federal Rule of Evidence 201 of those public court records in that case: the May 14, 2026 Order on Post-Trial Motions, Dkt. 912 (Ex. A); the June 1, 2026 Judgment, Dkt. 915 (Ex. B); and the July 1, 2026 Notice of Appeal, Dkt. 926 (Ex. C). These docket filings are matters of public record whose existence, filing dates, and contents are not

subject to reasonable dispute, and Insta360 relies on them to establish the prior adjudication and current appellate posture of claim 11 of the '954 patent. Fed. R. Evid. 201.

In its May 14, 2026 post-trial order, the U.S. District Court for the Northern District of California recounted the lengthy procedural history, including multiple summary judgment rounds, a ten-day jury trial, and post-trial JMOL motions, and held that claim 11 of the '954 patent is invalid as obvious. Ex. A at 2-3, 15-19. The court later entered final judgment for GoPro, expressly stating that GoPro was entitled to judgment as a matter of law that claim 11 of the '954 patent is invalid as obvious. Ex. B at 4. Contour filed a notice of appeal on July 1, 2026. Ex. C at 1.

**B.      The '983 Patent**

The Complaint also alleges that Contour owns U.S. Patent No. 12,206,983, likewise titled "Portable Digital Video Camera Configured for Remote Image Acquisition Control and Viewing." Compl. ¶ 13. The Complaint identifies claim 1 as representative and asserts infringement of "at least claim 1." *Id.* ¶¶ 13-15, 75-83. Claim 1 recites:

> A first video camera, comprising:
>
> a <u>lens</u>;
>
> an <u>image sensor</u> configured to generate first image data from light propagating through the lens;
>
> at least one <u>non-audio data sensor</u> configured to produce first non-audio sensor data associated with the first video camera;
>
> a <u>wireless connection protocol device</u>; and
>
> a <u>processor</u>, comprising:
>
>> a <u>video encoder</u>, and
>>
>> <u>memory</u>,
>
> wherein the processor is configured to:
>
>> receive the first image data from the image sensor,
>>
>> receive the first non-audio sensor data from the at least one non-audio data sensor,

generate at least one encoded video data stream using the video encoder, wherein a data type of the first non-audio sensor data is different from a data type of the at least one encoded video data stream,

send, using the wireless connection protocol device, the at least one encoded video data stream by wireless transmission to a first remote computing device, wherein the first remote computing device is connected to a first data storage medium, and wherein the first remote computing device is configured to store the at least one encoded video data stream on the first data storage medium as a first file,

combine the first non-audio sensor data with the at least one encoded video data stream to form a combined video stream,

communicate at least part of the combined video stream to the memory, wherein the at least one encoded video data stream is stored as a first track and the first non-audio sensor data is stored as a second track that is distinct from the first track, and

generate time-synchronizing data,

wherein the time-synchronizing data is used to synchronize the first track with the second track,

wherein the first video camera is configured as a media server that enables access to the combined video stream.

The Complaint alleges that claim 1 captures the purported innovation of integrating non-audio data (e.g., GPS data) sensors into a camera, combining non-audio sensor data with encoded video, storing those data in distinct tracks, generating time-synchronizing data, and enabling access to the combined stream through a media-server configuration. Compl. ¶¶ 14, 19. Those allegations form the basis of Contour's '983 patent infringement count. *Id.* ¶¶ 74-83.

Insta360 respectfully requests that the Court take judicial notice of the following documents from the public records of the United States Patent and Trademark Office: 1) an Examiner's Office Action dated March 27, 2024 from the prosecution history of the '983 patent (Ex. D, the "March 27 OA"); 2) an Applicant Amendment dated June 27, 2024 in response to the March 27 OA (Ex. E, the "June 27 Amendment"). The Court may properly take judicial notice of these documents in deciding a Rule 12(b)(6) motion. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (considering the prosecution history in affirming judgment on

4

the pleadings of § 101 invalidity); *Hoganas A.B. v. Dresser Indus.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993) (taking judicial notice of a patent not submitted to the trial court); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plausibility analysis under Rule 12(b)(6) is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense."); Fed. R. Evid. 201.

## II.      LEGAL STANDARDS

### A.      Patent Eligibility

Abstract ideas are not patentable. The Supreme Court articulated a two-step test in *Alice* for determining whether the subject matter of a claim is patent-eligible. 573 U.S. at 217–18. Under step one, the court determines whether the claims "are directed to a patent-ineligible concept," such as an abstract idea. *Id.* at 218. This assessment "must focus on the language of the Asserted Claims themselves." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020). "In cases involving software innovations, [the step one] inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies [as] an abstract idea for which computers are invoked merely as a tool." *Id.* at 1293. Purported improvement of "a user's experience while using a computer application is not, without more, sufficient to render the claims" eligible at *Alice* step one. *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020).

If the court determines that the claims are directed to an abstract idea, it continues to step two to determine if the claim elements disclose "additional features" that constitute an "inventive concept" "sufficient to ensure that the patent in practice amounts to significantly more" than the abstract idea itself. *Alice*, 573 U.S. at 217, 221. The court considers whether these "additional features" are "more than well-understood, routine, conventional activity." *Mayo Collaborative*

5

*Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 79 (2012).

In *Alice*, the Supreme Court specifically considered subject matter eligibility for computer-implemented inventions. 573 U.S. at 212. The Supreme Court held that, given the "ubiquity of computers," "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223. In the software context, the Federal Circuit specifically determined that merely reciting "data structures" or stating computer functions "without describing how any of those functions are performed" does not transform the abstract concept into a patent-eligible one under step two. *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017); *IBM Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1382 (Fed. Cir. 2022).

## B.    Motion to Dismiss

To survive Rule 12(b)(6), a complaint must plead enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, a court primarily considers the allegations in a complaint, but may also look to "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (citing 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

Patent eligibility under § 101 is a question of law suitable for resolution on a motion to dismiss under Rule 12(b)(6). *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Courts may grant the motion "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Id.*

6

### III.   ARGUMENT

### A.   Count I Should Be Dismissed Because Claim 11 of the '954 Patent Is Invalid and Contour Is Estopped from Relitigating It

The only identified '954 patent claim in the Complaint is claim 11. Compl. ¶¶ 10-12, 65-73. That claim has now been adjudicated invalid. The Northern District of California's final judgment states that the court determined GoPro was entitled to judgment as a matter of law that "Claim 11 of the '954 Patent is invalid as obvious." Ex. B at 4. The court entered final judgment for GoPro and against Contour. *Id.*

That judgment bars Count I under *Blonder-Tongue*. The Supreme Court held that an accused infringer may invoke collateral estoppel when a patent claim has "once been declared invalid," unless the patentee shows that it lacked a "fair opportunity procedurally, substantively and evidentially" to litigate the claim the first time. *Blonder-Tongue*, 402 U.S. at 333, 350. The doctrine applies with special force here. Contour was the plaintiff in the GoPro case. It litigated the validity of the same patent claim through trial and post-trial motions. The prior case resulted in a final judgment. The issue is identical: whether claim 11 of the '954 patent is valid. Contour therefore cannot assert that same invalid claim against Insta360.

Contour's pending appeal does not change the result. The Federal Circuit has held that "the law is well settled that the pendency of an appeal has no effect on the finality or binding effect of a trial court's holding," and that this rule applies to patent-invalidity holdings. *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 370 (Fed. Cir. 1983) (citing *Deposit Bank v. Bd. of Councilmen of City of Frankfort*, 191 U.S. 499 (1903), and *Alamance Indus., Inc. v. Gold Medal Hosiery Co.*, 194 F. Supp. 538, 540 (S.D.N.Y. 1961)).

Nor can Contour avoid dismissal by using the phrase "at least claim 11." Compl. ¶¶ 65-73. The Complaint identifies no other asserted claim of the '954 patent, provides no infringement

theory for any other claim, and pleads claim 11 as the representative claim. *Id.* ¶¶ 10-12. To the extent Contour later tries to assert unidentified '954 patent claims, those unpleaded theories are not in the Complaint. Count I should be dismissed.

**B.     Count II Should Be Dismissed Because Claim 1 of the '983 Patent Is Directed to Patent-Ineligible Subject Matter**

**1.     Claim 1 Is Representative of the '983 Patent Allegations**

The Court need not address any '983 claim other than claim 1. The Complaint identifies claim 1 as the representative '983 claim and pleads infringement of "at least claim 1," but it does not identify any other '983 claim or plead a claim-specific infringement theory for any other claim. Compl. ¶¶ 13-15, 75-83. The only '983 claim actually pleaded and placed at issue is therefore claim 1, and the § 101 analysis may proceed on that claim. *Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*, No. 4:20-CV-448-SDJ, 2021 WL 1196271, at *9 n.3 (E.D. Tex. Mar. 30, 2021) (Jordan, J.) ("However, the Court need not address this issue because all of the infringement allegations in [Plaintiff]'s complaint refer only to claim 1."), *aff'd*, No. 2021-1906, 2022 WL 794981 (Fed. Cir. Mar. 15, 2022).

Even if Contour later contends that other '983 claims should be considered, claim 1 is representative for eligibility purposes. The other independent claims are only minor variations of claim 1. Claim 13 takes the same camera-based data-handling concept and recites it in method form. Claim 24 keeps the same basic operations but changes the order of the workflow by storing the encoded video stream and non-audio sensor data in separate tracks before forming the combined video stream. '983 patent, cls. 13, 24. Neither change alters the claim focus: collecting video and non-audio sensor data, organizing the data in tracks or files, synchronizing the data, and making the resulting video-associated information available. The dependent claims then add only conventional implementation details, such as additional storage, display, GPS data, engine

8

data, audio data, a recording switch, a second camera, wireless transmission, and event categories. '983 patent, cls. 2-12, 14-23. None of those limitations changes the abstract idea or adds a specific improvement to camera hardware, encoding, synchronization, storage, wireless communication, or server technology. Claim 1 is therefore representative.

### 2. Claim 1 Is Directed to the Abstract Idea of Collecting, Combining, Synchronizing, Storing, and Providing Access to Information

Claim 1 of the '983 patent is directed to an abstract information-management idea: collecting video data and non-audio sensor data, combining those data into a stream with distinct tracks, using time-synchronizing data to align the tracks, storing/transmitting the data, and providing access to the combined stream. Compl. ¶ 14. That is an information-processing concept, not a specific improvement to camera technology.

The Federal Circuit has repeatedly held that claims directed to collecting, analyzing, manipulating, organizing, storing, transmitting, or displaying information are abstract when they do not recite a specific technological improvement. See, e.g., *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1367-71 (Fed. Cir. 2024) (receiving metadata and organizing display of video content based on that metadata abstract); *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-55 (Fed. Cir. 2016) (collecting, analyzing, and displaying information abstract); *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1350-51 (Fed. Cir. 2014) (generating a device profile from data sets abstract); *In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 611-15 (Fed. Cir. 2016) (recording, transmitting, and organizing digital images abstract); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337-40 (Fed. Cir. 2017) (streaming and monitoring information using functional network limitations abstract).

*Broadband iTV* is particularly instructive. There, claim 1 of the '026 patent recited an Internet-connected digital device that obtained and presented a templatized video-on-demand display using uploaded video content, associated metadata, category information, and images. 113 F.4th at 1363-64. The metadata specified the hierarchical location of video titles in the electronic program guide, and the claim recited layered display templates and content-management-system functionality. *Id.* The Federal Circuit held that the claims were directed to the abstract idea of "receiving metadata and organizing the display of video content based on that metadata." *Id.* at 1367-68. The court rejected the patentee's user-interface argument because the claims did not recite an improved user-interface structure or function, but instead arranged content in a particular order. *Id.* at 1368-69.

Claim 1 of the '983 patent is materially analogous. It receives two categories of data: image data and non-audio sensor data, which the Complaint describes as contextual information such as GPS, stabilization, speed, location, and time-code information. Compl. ¶¶ 14, 19, 27-30, 42-44, 61-63. It encodes one data stream, sends it wirelessly for storage, combines the non-audio sensor data with the encoded video stream, stores the two categories as separate tracks, generates time-synchronizing data, and makes the result accessible. *Id.* ¶ 14. Like the '026 claim in *Broadband iTV*, the '983 claim uses associated non-video information to organize, contextualize, store, and provide access to video content. If receiving video metadata and using it to organize a video display is abstract, then receiving non-audio sensor data and using it to organize a combined video stream with separate synchronized tracks is likewise abstract unless the claim recites a specific technological improvement. But it does not.

The claim language does not specify how the video encoder improves encoding, how the tracks are structurally created in memory, how synchronization is technically achieved, how the

alleged media server operates, or how wireless transmission is improved. It states functional results. That is the same defect the Federal Circuit identified in *Broadband iTV*: additional computer or media-display context did not save claims that organized video content based on associated information without claiming an improved technological structure. 113 F.4th at 1368-69.

The Complaint's own description confirms that the asserted advance is information organization and presentation. Contour alleges that the inventions "allow the camera to capture video footage combined with additional data, such as GPS data, to provide video files with additional and important context." Compl. ¶ 19. It gives examples such as showing GPS data on a map, adding speed and location to footage, and giving users "additional context." *Id.* ¶¶ 19-20. Supplying additional context by combining sensor data with video data is an abstract information-processing result.

The fact that claim 1 is drafted as a "video camera" does not end the § 101 inquiry. In *Yu v. Apple Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021), the Federal Circuit held camera claims patent-ineligible where they recited physical camera components but were directed to the abstract idea of taking and using pictures to enhance another picture. Claim 1 likewise recites generic camera and computer components to carry out an abstract data-combination and data-access concept. The claim's machine form cannot save it if the claim's focus is the abstract idea implemented with conventional components. See *Alice*, 573 U.S. at 226.

### 3.    Claim 1 Lacks an Inventive Concept

At *Alice* step two, claim 1 adds only conventional components performing their ordinary functions. The recited lens captures light. The image sensor generates image data. The non-audio data sensor produces non-audio sensor data. The wireless connection protocol device sends data

11

wirelessly. The video encoder encodes video. Memory stores data. The processor receives, combines, stores, synchronizes, and provides access to data. Compl. ¶ 14. These are generic camera, sensor, networking, processing, encoding, and storage functions.

The ordered combination is not inventive either. The claim merely arranges conventional components to perform the abstract idea on a video camera: gather two types of data, encode video, transmit/store a file, combine data into tracks, synchronize the tracks, and make the resulting stream accessible. Nothing in the claim recites a new sensor, new encoder, new file format, new synchronization algorithm, new memory structure, new wireless protocol, or new media-server architecture. A claim does not become eligible by "stating an abstract idea while adding the words 'apply it'" in a particular technological environment. *Alice*, 573 U.S. at 221-23.

The prosecution history of the '983 patent confirms the point. In the March 27 OA, the examiner rejected then-pending application claim 14—the earlier version of issued claim 1— under § 103 and mapped the camera, lens, image sensor, non-audio/GPS sensor, processor, video encoder, memory, image-data receipt, sensor-data receipt, video encoding, data-type distinction, combination of sensor data with encoded video, memory communication, track storage, and time-synchronizing limitations to prior art. Ex. D at 11-16. The examiner further stated that MPEG files with separate video, audio, and overlay tracks, and time data used for synchronization, were well known to a person of ordinary skill in the art. *Id.* at 14-15.

The June 27 Amendment then amended application claim 14 to add, among other underlined language, a "wireless connection protocol device" and a limitation requiring the processor to send the encoded video data stream wirelessly to a remote computing device connected to a first data storage medium for storage as a first file. Ex. E at 2. But the March 27 OA had already treated wireless transmission of video, audio, and position data to a remote

12

computing device as disclosed by VanWagner, and treated remote storage of encoded video data as disclosed by Boland. Ex. D at 16, 20-21. The applicant's amendment therefore does not supply an inventive concept: the amendment "merely claims the use of functions already available on conventional technologies." *Repifi Vendor Logistics*, 2021 WL 1196271, at *7. The added transmission-and-storage limitation functions independently and does not interact with the remaining limitations on combining non-audio sensor data with encoded video, storing separate tracks, generating time-synchronizing data, or enabling media-server access to the combined stream. It does not transform the abstract information-management idea into any technological improvement.

Again, *Broadband iTV* is the close analogy here. The patentee there argued that automatic generation of displays from specific template types, a content management system, and claimed templates supplied the inventive concept. The Federal Circuit rejected each argument. 113 F.4th at 1369-71. It held that automation of the abstract idea was not an inventive concept; that the content-management system was a conventional server where the patent did not claim an improvement to server technology; and that generic templates did not transform the claim because the specification did not purport to improve template technology. *Id.* at 1370-71.

The same reasoning applies here. The '983 claim's "media server" limitation is no more inventive than the content-management server in *Broadband iTV*: it is recited at the level of a generic role that "enables access" to the combined video stream. Compl. ¶ 14. The "first track" and "second track" limitations are no more inventive than the templates in *Broadband iTV*: they are organizational containers for associated video and non-video information, not a claimed improvement to track structure, file systems, memory, or media-container technology. And "generat[ing] time-synchronizing data" is not a claimed synchronization technique; it is

13

functional language for the desired result of aligning the video and sensor-data tracks. *Id.* As in *Broadband iTV*, the components and labels merely automate and implement the abstract information-organization idea.

Contour's conclusory allegations that the claims are "marked improvements" and involve more than "well-understood, routine, and conventional activities" do not create a factual dispute. Compl. ¶¶ 19-20. Those allegations are directed primarily to the '954 patent's dual-stream remote-preview architecture, not to any specific unconventional element of '983 claim 1. For the '983 patent, the Complaint identifies results: integrate non-audio sensors, combine non-audio sensor data with video, store the data in distinct tracks, and generate time-synchronizing data. *Id.* ¶ 19. But it does not plead facts showing that any claimed implementation of those results was unconventional. Nor can it, because the claim itself recites the implementation only in broad functional terms.

That matters because § 101 asks whether the claim, not the patentee's desired result, contains an inventive concept. See *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) (a claimed invention's use of the ineligible concept to which it is directed is not an inventive concept). Claim 1 leaves the alleged "how" entirely open. It would cover any camera that collects non-audio sensor data, stores that data in a distinct track from encoded video, uses time data to synchronize the tracks, and provides media-server access. That breadth confirms ineligibility.

### 4.     Contour's Expected Responses Do Not Save Claim 1

Contour cannot save the claim by pointing to the fact that the combined stream may be useful to athletes, drivers, or vloggers because it provides "additional context" by allowing the camera to capture video footage combined with additional data, such as GPS data. Compl. ¶ 19;

'983 patent, col. 1:64-67. *Broadband iTV* rejected eligibility even though the claimed video guide allegedly helped viewers find desired video content among many programs. 113 F.4th at 1368. A useful organization of video-associated information remains abstract when the claim does not recite the technological means for improving the underlying computer, camera, storage, synchronization, or server technology. More importantly, the alleged benefit here confirms, rather than avoids, the abstract character of claim 1. It is not a technological innovation in the camera. It is the informational value of associating two categories of data—video data and non-audio or location data—using time-based data. That kind of time-based synchronization is entirely conventional. It is no different in kind from synchronizing subtitle text with a movie or other video by timestamps or timecodes: the additional information may make the video more useful to a viewer, but the idea of aligning time-indexed information with time-indexed video is an ordinary information-organization practice. Claim 1 does not claim a new GPS receiver, sensor, file format, synchronization algorithm, memory structure, or camera architecture for doing so. It claims the result of keeping video data and sensor data in separate tracks, generating time-synchronizing data, and using that timing information to align the tracks. Correlating information by time to provide more useful or contextual information is an abstract information-organization idea, not an inventive technological solution.

Contour may argue that claim 1 is technical because it recites a physical camera and camera components. But conventional physical components do not supply eligibility when the claim's focus is abstract information handling. *Yu*, 1 F.4th at 1043-45; *TLI*, 823 F.3d at 611-15. The question is whether the claim improves the components themselves. Claim 1 does not.

Contour may also argue that synchronization of non-audio sensor data with video is a technical problem. But claim 1 does not claim a technical solution to synchronization. It claims

15

the desired result: "generate time-synchronizing data" that "is used to synchronize" a video track and a non-audio sensor-data track. Compl. ¶ 14. Purely functional claiming at that level is not enough. *Two-Way Media*, 874 F.3d at 1337-40.

Contour may further rely on the specification's discussion of GPS, Bluetooth, Wi-Fi, remote viewing, metadata tracks, or media-server access. But the claim does not recite a specific GPS improvement, Bluetooth improvement, Wi-Fi improvement, track structure, or server architecture. The patent's abstract and summary describe using known wireless and GPS technology to provide remote control, viewing, data acquisition, and access to stored or streaming image content. See '983 patent, Abstract, col. 1:46-67. Such disclosure reinforces that the claim uses existing technology as a tool to perform the data-combination concept.

Finally, Contour may cite prior eligibility rulings involving related Contour patents or claims. See *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1381 (Fed. Cir. 2024) (holding claim 11 of the '954 not directed to patent-ineligible subject matter). The ruling does not control here. Although the '983 patent purports to be a continuation of the '954 patent, the claimed subject matter of the two patents is materially different. Claim 1 of the '983 patent is not the '954 claim 11 dual-stream remote-preview claim. It is a later-issued claim directed to combining non-audio sensor data with encoded video data, storing the data in separate tracks, synchronizing the tracks, and exposing the stream through a media-server configuration. That different claim focus warrants a separate § 101 analysis. See *Tiare Tech., Inc. v. Whataburger Restaurants, LLC*, No. 2:22-CV-0182-JRG-RSP, 2023 WL 2733348, at *1 (E.D. Tex. Mar. 15, 2023) (finding two patents-in-suit issued from continuation applications claiming priority to the same parent application and sharing a common specification were subject to different patent-eligibility analyses).

**5.      The Remaining Claims of the '983 Patent Are Also Abstract and Lack an Inventive Concept**

Nor would any other '983 claim change the § 101 analysis. The Complaint identifies claim 1 as representative and asserts infringement of "at least claim 1." Compl. ¶¶ 13-15, 75-83. If Contour later attempts to rely on claims 2-24, those claims are directed to the same abstract idea or narrower variants of it. The independent claims confirm the point. Claim 13 merely converts claim 1 into a method claim by reciting the same functional steps of receiving image and non-audio sensor data, generating encoded video, combining and storing data, generating time-synchronizing data, and enabling access to the resulting stream. Claim 24 is likewise a minor variation: it retains the same data collection, storage, synchronization, combination, and media-server-access concept, while changing the sequence so the encoded video and non-audio sensor data are stored as distinct tracks before they are combined. '983 patent, cls. 13, 24. Recasting the same abstract idea as a method, or rearranging the order of conventional data-handling steps, does not supply a technological improvement.

The dependent claims confirm the same point. Each dependent claim merely adds a conventional data source, storage destination, display, input, transmission, post-processing, or other routine implementation detail:

- Claim 2 adds a second data storage medium and stores the encoded video stream as a second file. That is conventional file storage, not an improvement to storage architecture.

- Claim 3 adds a post-processor that associates event categories with the combined video stream based on its content. That is conventional content classification and post-processing.

- Claim 4 determines event categories based on a body of previously categorized video streams. Using prior categorized data as a reference set is conventional classification, not a new processing technique.

- Claim 5 places the event-category post-processor on a second remote computing device. Remote post-processing is a conventional allocation of computing work.

- Claim 6 adds a display showing the first image data. A camera display is conventional output hardware.

- Claim 7 specifies that the non-audio data sensor is a GPS receiver. GPS data is a conventional source of location and time information.

- Claim 8 adds a microphone and audio encoder, then embeds encoded audio with the encoded video stream. Capturing, encoding, and combining audio with video are conventional media functions.

- Claim 9 adds a switch activator that activates the first video camera. A switch is a conventional camera input.

- Claim 10 adds second image data from a second video camera and communicates that data to memory. Receiving and storing data from another camera is conventional multi-camera data handling.

- Claim 11 specifies that the non-audio data sensor is an automotive engine sensor. Engine data is another conventional sensor-data source.

- Claim 12 sends the combined video stream wirelessly to the first remote computing device. Wireless transmission of media data is conventional networking.

18

- Claim 14 is the method counterpart to claim 2, adding storage of the encoded video stream as a second file on a second storage medium. That remains conventional file storage.

- Claim 15 is the method counterpart to claim 6, adding display of the first image data. Displaying image data is routine camera output.

- Claim 16 specifies that the non-audio sensor data is GPS data received from a GPS receiver. That is conventional location-data collection.

- Claim 17 is the method counterpart to claim 8, adding microphone audio, audio encoding, and embedding encoded audio with encoded video. Those are routine media-processing steps.

- Claim 18 adds activating recording with a switch activator. That is a conventional user-input step.

- Claim 19 specifies that the non-audio sensor data is engine data received from an engine sensor. That is a conventional automotive data source.

- Claim 20 adds receiving second image data from a second video camera and communicating it to memory. That is routine multi-camera data collection and storage.

- Claim 21 adds event-category data associated with the first image data using the non-audio data sensor. Associating category data with image data is conventional metadata/classification work.

- Claim 22 produces event-category data based on a body of image data with which event categories were previously associated. That is conventional classification using prior categorized data.

19

- Claim 23 sends the combined video stream wirelessly to the remote computing device. That is conventional wireless transmission.

Thus, the dependent claims only narrow the abstract information-management idea by adding conventional camera, sensor, storage, display, audio, input, networking, multi-camera, and classification details. They do not transform the claim focus into an improvement in camera hardware, media-container technology, synchronization technology, wireless communication, encoding, storage, or server operation. Even if any unpleaded '983 claim were considered, Count II would still fail under *Alice*.

## C.    No Claim Construction Is Needed

No claim construction is necessary to resolve this motion. Insta360's eligibility arguments accept the claim language at face value. Where claim construction would not change the eligibility analysis, dismissal at the pleading stage is appropriate. *See Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) ("Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101.") (citation omitted).

## D.    Amendment Would Be Futile

Contour has not alleged any facts that, when taken as true, prevent the Court from resolving patent-eligibility at this point. Nor can it. Therefore, dismissal should be with prejudice as "the defects [in the complaint] are incurable." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). On their face, Contour's patent claims ineligible subject matter, and no amendment can change this fatal fact.

## IV. CONCLUSION

The Complaint asserts only two patent claims. Claim 11 of the '954 patent has already been finally adjudicated invalid, and Contour is estopped from relitigating that claim against Insta360. Claim 1 of the '983 patent is directed to an abstract idea and lacks an inventive concept, and the remaining '983 claims add only conventional data-source, storage, display, classification, transmission, or method-claim variants that do not alter the § 101 analysis. Insta360 respectfully requests that the Court dismiss the Complaint with prejudice.

July 21, 2026

Respectfully submitted.

By: /s/ J. Benjamin Bai

J. Benjamin Bai
Texas Bar No. 24001675
**King & Wood LLP**
500 Fifth Avenue, 50th Floor
New York, NY 10110
Telephone: (212) 319-4755
Email: benjamin.bai@cn.kingandwood.com

Yang Guo
New York Bar No. 5897251
**King & Wood**
17th Floor, One ICC, Shanghai ICC
999 Middle Huai Hai Road, Xuhui District
Shanghai 200031, China
Telephone: (628) 999-0922
Email: guoyang5@cn.kingandwood.com

Haolu Feng
D.C. Bar No. 90001026
**King & Wood**
17th Floor, One ICC, Shanghai ICC
999 Middle Huai Hai Road, Xuhui District
Shanghai 200031, China
Telephone: (206) 499-2956
Email: harry.feng@cn.kingandwood.com

*Counsel for Arashi Vision Inc. d/b/a Insta360*

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 21, 2026, a true and correct copy of the foregoing was electronically filed using CM/ECF, which serves electronic notice on all counsel of record and registered CM/ECF users.


By: /s/ J. Benjamin Bai