# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/937,753 | 10/03/2022 | Laura O'Donnell | CONTR.011C8 | 8104 |

20995        7590        03/27/2024
Knobbe, Martens, Olson & Bear, LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| PARIKH, DAKSHESH D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2488 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 03/27/2024 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

Atty.AdminCoordinator@knobbe.com
efiling@knobbe.com

PTOL-90A (Rev. 04/07)

| ***Office Action Summary*** | **Application No.** 17/937,753 | | **Applicant(s)** O'Donnell et al. | |
|---|---|---|---|---|
| | **Examiner** DAKSHESH D PARIKH | | **Art Unit** 2488 | **AIA (FITF) Status** No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>03/08/2024</u>.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☐ This action is **FINAL.**    2b) ☑ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>14-22,24-37 and 39-43</u> is/are pending in the application.
  5a) Of the above claim(s) <u>22,24-26,37 and 39-41</u> is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>14-21,27-36 and 42-43</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☐ The drawing(s) filed on _____ is/are:  a) ☐ accepted or  b) ☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a) ☐ All    b) ☐ Some**    c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

| 1) ☑ Notice of References Cited (PTO-892) | 3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____. |
|---|---|
| 2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date <u>03/08/2024</u>. | 4) ☐ Other: _____. |

U.S. Patent and Trademark Office

Application/Control Number: 17/937,753                                                                Page 2
Art Unit: 2488

# DETAIL

## *Notice of Pre-AIA or AIA Status*

[1]      The present application is being examined under the pre-AIA first to invent provisions.

## *Applicant(s) Response to Official Action*

[2]      The response filed on 03/08/2024 has been entered and made of record.

### *Claim Rejections - 35 USC § 102 and 35 USC § 103*

[3]      Presented arguments have been fully considered, but are rendered moot in view of the new

ground(s) of rejection necessitated by amendment(s) initiated by the applicant(s).

## *Double Patenting*

[4]      The non-statutory double patenting rejection is based on a judicially created doctrine

grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or

improper timewise extension of the "right to exclude" granted by a patent and to prevent possible

harassment by multiple assignees.  A nonstatutory obviousness-type double patenting rejection is

appropriate where the conflicting claims are not identical, but at least one examined application

claim is not patentably distinct from the reference claim(s) because the examined application claim is

Application/Control Number: 17/937,753                                                     Page 3

Art Unit: 2488

either anticipated by, or would have been obvious over, the reference claim(s).  See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent either is shown to be commonly owned with this application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement.

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

[5]     Claims 14-16, 18-19, 21, 27, 29-31, 33-36, 43 provisionally rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claim 1-30 of Patent US8890954B2, over claim 1-20 of Patent US8896694B2, over claim 1-31 of Patent US9742975B2, over claim 1-9 of Patent US10356304B2, over claim 1-20 of Patent US11076084B2, in view of VanWagner (US20050078195A1) (hereinafter VanWagner) and further in view of Fong et al. (US20070255496A1) (hereinafter Fong).  Although the conflicting claims are not identical, they are not patentably distinct from each other because it is merely in the terminology used in both sets of claims.

[6]     Claims 17, 28, 32, 42 provisionally rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claim 1-30 of Patent US8890954B2, over claim 1-20 of

Application/Control Number: 17/937,753                                                           Page 4
Art Unit: 2488

Patent US8896694B2, over claim 1-31 of Patent US9742975B2, over claim 1-9 of Patent

US10356304B2, over claim 1-20 of Patent US11076084B2, in view of VanWagner

(US20050078195A1) (hereinafter VanWagner) and further in view of Fong et al.

(US20070255496A1) (hereinafter Fong) and further in view of Boland et al. (US20100118158A1)

(hereinafter Boland).  Although the conflicting claims are not identical, they are not patentably

distinct from each other because it is merely in the terminology used in both sets of claims.


This is a provisional obviousness-type double patenting rejection because the conflicting

claims have not in fact been patented. Below is a list of limitations that perform the same function.

However different terminology is used in both sets to describe the limitations.

The referenced patent and the instant application are claiming common subject matter, as

follows:

*Note: Bold indicates the common subject matter

| Instant Application: 17/937,753 | Patent: 8890954 | Patent: 8896694 | Patent: 9742975 | Patent: 10356304 | Patent: 11076084 |
|---|---|---|---|---|---|
| 14. (Currently Amended) **A first video camera, comprising: a lens; an image sensor configured to generate first image data from light propagating through the lens;** at least one non-audio data sensor configured to produce first non-audio | 1. An integrated, hands-free, portable, viewfinderless point of view **digital video camera, comprising: a lens and an image sensor, the image sensor capturing light propagating through the lens and representing a scene to be recorded,** and the image sensor producing real time video image data of the | 1. A point of view **digital video camera system, comprising:** an integrated hands-free portable viewfinderless video camera, **the video camera including a lens and an image sensor, the image sensor capturing light propagating through the lens and representing a scene to be recorded,** and the image sensor | **1. A video camera system, comprising: a first digital video camera and a second digital video camera, each respective digital video camera comprising: a lens and an image sensor, the image sensor capturing light propagating through the lens and representing a scene to be recorded,** and the image sensor producing real | **1. A digital video camera, comprising: a lens and an image sensor, the image sensor capturing light propagating through the lens and representing a scene, and the image sensor producing image data of the scene;** a microphone configured to capture first | 1. **A digital video camera** for recording multiple live audio streams and **a live video stream** to a video file, **the digital video camera comprising: a lens and an image sensor, the image sensor capturing light propagating through the lens and representing a scene,** and the image sensor |

Application/Control Number: 17/937,753                                                                    Page 5
Art Unit: 2488

| | | | | | |
|---|---|---|---|---|---|
| sensor data associated with the first video camera; and **a processor, comprising: a video encoder, and memory, wherein the processor is configured to: receive the first image data from the image sensor,** receive the first non-audio sensor data from the at least one non-audio data sensor, **generate at least one encoded video data stream using the video encoder,** wherein a data type of the first non-audio sensor data is different from a data type of the at least one encoded video data stream, combine the first non-audio sensor data with the at least one encoded video data stream to form a | scene; a wireless connection protocol device configured to send real time image content by wireless transmission directly to and receive control signals or data signals by wireless transmission directly from a wireless connection-enabled controller; and a **camera processor configured to: receive the video image data** directly or indirectly from the image sensor, generate, from the video image data, first video image content at a first resolution and second video image content at a second resolution, wherein the first resolution is lower than the second resolution, communicate the first video image content using the wireless connection protocol device to the wireless connection-enabled controller without | producing real time video image data of the scene without displaying the scene to a user of the video camera, wherein the real time video image data of the scene relates to an activity in which the user of the video camera is about to engage, the video camera comprising: **a camera processor for receiving the video image data** directly or indirectly **from the image sensor,** and a wireless connection protocol device operatively connected to the camera processor to send real time video image content by wireless transmission directly to and receive control signals or data signals by wireless transmission directly from a wireless connection-enabled controller, wherein the camera processor is configured to: | time video image data of the scene; a wireless connection protocol device configured to send real time image content by wireless transmission directly to and receive at least one control signal by wireless transmission directly from a wireless connection-enabled controller; and a camera processor configured to: receive the real time video image data, generate a first stream of video image content at a first resolution and a second stream of video image content at a second resolution in real time based at least in part on same real time video image data of the real time video image data, wherein the first resolution is lower than the second resolution, communicate first video image content from the first stream of the respective digital video | audio data of the scene; a wireless connection protocol device configured to wirelessly communicate with another digital video camera and a wireless connection-enabled controller; and a **camera processor configured to:** receive control signals from the wireless connection-enabled controller via the wireless connection protocol device, communicate the control signals to the another digital video camera via the wireless connection protocol device, wherein the another digital video camera adjusts one or more camera settings of the another digital video camera based on the control signals received from the wireless connection | producing live image data of the scene; a microphone configured to capture first live audio and produce first live audio data; and a camera processor, wherein a first audio codec of the camera processor processes locally generated microphone data received from the microphone of the digital video camera and a second audio codec of the camera processor processes wirelessly received microphone data received from a remotely located wireless connection-enabled microphone, the camera processor configured to: receive a record command, receive the first live audio data in real time, receive second live audio data in real time from the remotely located wireless connection-enabled microphone, |

Application/Control Number: 17/937,753                                                     Page 6
Art Unit: 2488

| | | | | | |
|---|---|---|---|---|---|
| combined video stream, **communicate at least part of the combined video stream the memory,** wherein the at least one encoded video data stream is stored as a first track and the first non-audio sensor data is stored as a second track that is distinct from the first track, and generate time-synchronizing data, wherein the time-synchronizing data is used to synchronize the first track with the second track. | displaying the first video image content, the second video image content, or the video image data at the video camera, receive the control signals from the wireless connection-enabled controller, adjust image capture settings of the video camera prior to recording the scene based at least in part on at least a portion of the control signals, and in response to a record command, cause the second video image content to be stored at the video camera, wherein the wireless connection-enabled controller comprises executable instructions for execution on a handheld personal portable computing device, wherein when executed, the executable instructions cause the handheld personal portable computing device to: receive | generate the video image content simultaneously at a first resolution and at a second resolution, the video image content at the first resolution and the second resolution corresponding to the video image data representing the scene to be recorded, wherein the first resolution is lower than the second resolution, stream the real time video image content at the first resolution using the wireless connection protocol device to the wireless connection-enabled controller without displaying the video image content at the video camera, receive the control signals for adjusting image capture settings of the video camera, adjust the image capture settings of the video camera prior to recording the scene, and in response to a | camera using the wireless connection protocol device to the wireless connection-enabled controller, receive the at least one control signal from the wireless connection-enabled controller, perform at least one action based at least in part on the at least one control signal received from the wireless connection-enabled controller, wherein the at least one action comprises synchronizing start and/or stop of recording with other digital video camera of the first digital video camera or the second digital video camera, and at least one of adjusting at least one setting of the respective digital video camera or accessing a file stored at the respective digital video camera, and in response to a record command, cause second video image content | protocol device, receive the image data of the scene, receive the first audio data of the scene, receive second audio data of the scene from a remotely located wireless connection-enabled microphone, **process the image data of the scene using a video codec to produce compressed video image data,** process the first audio data of the scene using a first audio codec to produce first compressed audio data, process the second audio data of the scene using a second audio codec to produce second compressed audio data, generate a video file that includes the compressed video image data as a video track, the first | receive the live image data, process the first live audio data using the first audio codec to produce first compressed live audio data, process the second live audio data using the second audio codec to produce second compressed live audio data, wherein the camera processor separately processes the first live audio data using the first audio codec and the second live audio data using the second audio codec, **process the live image data using a video codec to produce compressed live video data,** generate an original video file that includes the first compressed live audio data in a first audio track, the second compressed live audio data and a synchronization pulse in a second audio track, and the compressed live video data in a video track, and |

Application/Control Number: 17/937,753                                                                 Page 7
Art Unit: 2488

| | | | | |
|---|---|---|---|---|
| the first video image content from the wireless connection protocol device, display the first video image content on a display of the handheld personal portable computing device, the first video image content comprising a preview image of the scene, the preview image allowing a user of the video camera to manually adjust a position or orientation of the video camera to record the scene, generate the control signals based at least on input received at the handheld personal portable computing device, wherein the control signals comprise at least one of a frame alignment, a multi-camera synchronization, remote file access, and a resolution setting and at least one of a lighting setting, an audio setting, and a color setting, and communicate the control signals to | record command, cause the video image content at the second resolution to be stored at the video camera; a mounting interface coupled to the video camera; a mount configured to be mounted to the body, a garment, or a vehicle of the user of the video camera, the mount configured to receive the mounting interface for rotatably mounting the camera on the body, the garment, or the vehicle of the user of the video camera, the mounting interface and the mount further configured for manual adjustment of the video camera with respect to the user of the video camera; and the wireless connection-enabled controller for controlling the video camera, the controller comprising executable instructions for execution on a personal | from the second stream of the respective digital video camera to be stored at the respective digital video camera nearly synchronously with the second stream of the other digital video camera being stored at the other digital video camera, wherein the wireless connection-enabled controller comprises executable instructions for execution on a handheld personal portable computing device, wherein when executed, the executable instructions cause the handheld personal portable computing device to: receive the first video image content generated by the first digital video camera, receive the first video image content generated by the second digital video camera, concurrently display the first video image content | compressed audio data as a first audio track, and the second compressed audio data as a second audio track, wirelessly communicate via the wireless connection protocol device a first stream of video data to the wireless connection-enabled controller, and in response to a record command, store the video file in a local data store, wherein the wireless connection-enabled controller is configured to: receive the first stream of video data from the digital video camera and a second stream of video data associated with the another digital video camera, and concurrently display the first stream of video data | in response to the received record command, store the original video file in a local data store, wherein the synchronization pulse is used to synchronize the first compressed live audio data and the second compressed live audio data. |

| | the wireless connection protocol device. | portable computing device operable by a user of the personal portable computing device, wherein when executed, the executable instructions cause the personal portable computing device to: receive video image content at the first resolution directly from the video camera, display the video image content at the first resolution on a display of the portable computing device for adjustment of the image capture settings prior to the user of the video camera recording the activity, the video image content at the first resolution comprising a preview image of the scene which is not recorded on the camera or the personal portable computing device, the preview image allowing the user of the video camera to manually adjust | generated by the first digital video camera and the first video image content generated by the second digital video camera on a display of the handheld personal portable computing device thereby allowing one or more users of the first digital video camera and the second digital video camera to manually adjust at least one of a position or orientation of the first digital video camera and/or the second digital video camera with respect to each other to record the scene, access a plurality of video camera controls of the first digital video camera and the second digital video camera, wherein the plurality of video camera controls comprise a color setting and at least one of a frame alignment, a multi-camera synchronization, remote file access, or a resolution setting, generate | and the second stream of video data on a display of the wireless connection-enabled controller. | |

Application/Control Number: 17/937,753                                                                      Page 9
Art Unit: 2488

| | | an angle of the video camera with respect to the user of the video camera, and generate the control signals to the wireless connection protocol device on the video camera to allow the user of the personal portable computing device to remotely adjust the image capture settings prior to the video camera recording the activity, wherein the control signals comprise at least one of frame alignment, multi-camera synchronization, remote file access, data acquisition, and resolution setting adjustment and at least one of lighting setting adjustment, audio setting adjustment, and color setting adjustment. | the at least one control signal for the first digital video camera and the second digital video camera based at least in part on at least one of the plurality of video camera controls, and communicate the at least one control signal to the first digital video camera and the second digital video camera. | | |
|---|---|---|---|---|---|

[7]    Referring to independent claim 14, although conflicting Patent US8890954B2, US8896694B2, US9742975B2, US10356304B2 and US11076084B2 does not explicitly disclose what's claimed in instant application 17/937,753, However, VanWagner and Fong discloses the claim limitations that are not explicitly disclose by conflicting Patent US8890954B2, US8896694B2,

US9742975B2, US10356304B2 and US11076084B2. Please refer to VanWagner and Fong.

Therefore, one of ordinary skill in the art at the time of applicant's invention would have clearly

recognized that combining the teaching of Patent US8890954B2, US8896694B2, US9742975B2,

US10356304B2 and US11076084B2 with the teachings of VanWagner and Fong would result in the

claimed invention.

[8]      Regarding independent claim 29 and 43, the claim(s) recites analogous limitations to claim 14

above, and is/are therefore rejected on the same premise.

[9]      Regarding dependent claim 15-21, 27-28, 30-36 and 42, conflicting Patent US8890954B2,

US8896694B2, US9742975B2, US10356304B2 and US11076084B2 does not explicitly disclose

what's claimed in instant application 17/937,753. However, VanWagner, Fong and Boland discloses

the claim limitations that are not explicitly disclose by conflicting Patent US8890954B2,

US8896694B2, US9742975B2, US10356304B2 and US11076084B2. Please refer to VanWagner,

Fong and Boland. Therefore, one of ordinary skill in the art at the time of applicant's invention

would have clearly recognized that combining the teaching of Patent US8890954B2, US8896694B2,

US9742975B2, US10356304B2 and US11076084B2 with the teachings of VanWagner, Fong and

Boland would result in the claimed invention.

## Notice re prior art available under both pre-AIA and AIA

In the event the determination of the status of the application as subject to AIA 35 U.S.C.

102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the

Application/Control Number: 17/937,753                                                          Page 11
Art Unit: 2488

statutory basis for the rejection will not be considered a new ground of rejection if the prior art

relied upon, and the rationale supporting the rejection, would be the same under either status.

## *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness
rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not
> identically disclosed as set forth in section 102 of this title, if the differences between the claimed invention
> and the prior art are such that the claimed invention as a whole would have been obvious before the
> effective filing date of the claimed invention to a person having ordinary skill in the art to which the
> claimed invention pertains. Patentability shall not be negated by the manner in which the invention was
> made.

The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966),
that are applied for establishing a background for determining obviousness under 35 U.S.C.
103 are summarized as follows:

1. Determining the scope and contents of the prior art.
2. Ascertaining the differences between the prior art and the claims at issue.
3. Resolving the level of ordinary skill in the pertinent art.
4. Considering objective evidence present in the application indicating obviousness or
nonobviousness.

This application currently names joint inventors. In considering patentability of the claims
the examiner presumes that the subject matter of the various claims was commonly owned
as of the effective filing date of the claimed invention(s) absent any evidence to the contrary.
Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and
effective filing dates of each claim that was not commonly owned as of the effective filing
date of the later invention in order for the examiner to consider the applicability of 35 U.S.C.
102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2) prior art against the later invention.

[10]    Claim 14-16, 18-19, 21, 27, 29-31, 33-36, 43 is/are rejected under 35 U.S.C. 103 as being

unpatentable over VanWagner (US20050078195A1) (hereinafter VanWagner) and further in view of

Fong et al. (US20070255496A1) (hereinafter Fong).

Application/Control Number: 17/937,753                                                                 Page 12

Art Unit: 2488

Regarding Claim 14, VanWagner meets the limitations as follows:

A first video camera, *[i.e. personal mobile digital recording system (MDRS); Fig. 1-4and associated text, Para 0018]* comprising:

a lens; *[i.e. a camera head 1 with color CCD Sensor that supports replaceable lenses; Fig. 1A-B, and associated text; Para 0022, 0025]*

an image sensor *[i.e. a camera head 1 with color CCD Sensor; Fig. 1A-B, and associated text; Para 0022, 0025]* configured to generate first image data from light propagating through the lens; *[i.e. images are captured through an integrated lens via the CIF CCD Module 21. This module coverts light to electronic signals using a CCD. Fig. 2, and associated text; Para 0067]*

at least one non-audio data sensor *[i.e. The MDRS incorporates a GPS (Global Positioning System) chip and antenna Fig. 2-3, and associated text; Para 0026]* configured to produce first non-audio sensor data *[i.e. processor reads a GPS device 25 and a real time clock (not shown); Fig. 2-3, and associated text; Para 0068]* associated with the first video camera *[i.e. MDRS includes GPS capability. GPS location data is encoded in the MPEG data stream to track the location of the MDRS; Para 0037]* ; and

a processor, *[i.e. processor (for example, ARM9; Fig. 2-3 and associated text, Para 0068]* comprising:

a video encoder, *[i.e. encoding device 23 encodes the video frames; Fig. 2-3 and associated text, Para 0068]* and

memory, *[i.e. MDRS includes at least two removable Secure Digital (SD) memory cards; Fig. 2-3 and associated text, Para 0022]*

wherein the processor is configured to:

Application/Control Number: 17/937,753                                                                                    Page 13
Art Unit: 2488

receive the first image data from the image sensor *[i.e. images are captured through an integrated lens via the CIF CCD Module 21 and output data of the CCD module and the Audio ADC is fed into an encoding device 23.; Fig. 2-3, and associated text, Para 0067-0068]*,

receive the first non-audio sensor data *(i.e. GPS data)* from the at least one non-audio data sensor (i.e. GPS sensor), *[i.e. processor reads a GPS device 25 and a real time clock (not shown); Fig. 2-3, and associated text; Para 0068]*

generate at least one encoded video data stream using the video encoder, *[i.e. video is captured in color at a resolution of 360.times.240 at 30 frames per second and video encoding format is MPEG4 and can achieve upwards of 40:1 compression.; Para 0028, 0082]*

wherein a data type of the first non-audio sensor data *(i.e. GPS data)* is different from a data type of the at least one encoded video data stream, *[i.e. GPS location information is encoded as part of the video and audio data stream.; Para 0026,]*

combine the first non-audio sensor data *(i.e. audio data)* with the at least one encoded video data stream to form a combined video stream, *[i.e. GPS location information is encoded as part of the video and audio data stream; Para 0026, video, audio, date and time, GPS overlay channel, electronic compass bearing channel, and biometric data overlay channel are encoded in an MPEG data stream.; Para 0035]*

communicate at least part of the combined video stream to the memory. *[i.e. encoding device 23 stores each video frame in a SDRAM 25, and compresses the stream of frames using, for example, the MPEG4 and/or MPEG2 standards. In addition, the processor reads a GPS device 25 and a real time clock (not shown) and embeds this information in the MPEG stream. The resulting MPEG compressed audio/video stream is stored in the SDRAM 24 as well.; Para 0068, 0035]*

Application/Control Number: 17/937,753                                          Page 14
Art Unit: 2488

wherein the at least one encoded video data stream is stored as a first track and the first non-audio sensor data is stored as a second track that is distinct from the first track, *[i.e. MPEG data stream containing video+audio+date and time+40 bytes GPS and Compass+120 bytes bio; Para 0035, GPS data encoded on an "overlay" channel in the MPEG4 data stream, Para 0077, VanWagner does not explicitly disclose the first track and second track, but the video and non-audio data are stored as MPEG data stream implies that these data are stored in multiple separate tracks as per MPEG standards. Examiner takes Official notice that MPEG data stream stored in a file having sperate video track, audio track and overlay track are well known to the person of ordinary skill in the art and defined in the MPEG standers documents. Therefore, it would have been obvious to one having ordinary skill in the art to provide storing video data in first track and GPS data in second track as claimed.]* and

generate time-synchronizing data, *[i.e. MPEG data stream containing video+audio+date and time+40 bytes GPS and Compass+120 bytes bio; Para0035-0036, MDRS records video and audio in MPEG4 file format. This file format allows date/time encoding in the data stream.; Para 0082]*

wherein the time-synchronizing data is used to synchronize the first track with the second track. *[i.e. MPEG data stream containing video+audio+date and time+40 bytes GPS and Compass+120 bytes bio; Para 0035, GPS data encoded on an "overlay" channel in the MPEG4 data stream, Para 0077, VanWagner does not explicitly disclose the first track and second track, but the video and non-audio data are stored as MPEG data stream implies that these data are stored in multiple separate tracks as per MPEG standards file and time data associated with it is used for synchronization. Examiner takes Official notice that MPEG data stream stored in a file in sperate video track, audio track and overlay track and time data associated with it is used for synchronization are well known to the person of ordinary skill in the art and*

*defined in the MPEG standers documents. Therefore, it would have been obvious to one having ordinary skill in the art to provide storing video data in first track and GPS data in second track along with time data and use it for synchronization as claimed.]*

VanWagner does not explicitly disclose the following claim limitations:

… wherein the at least one encoded video data stream is stored as a first track and the first non-audio sensor data is stored as a second track that is distinct from the first track, and …

… wherein the time-synchronizing data is used to synchronize the first track with the second track.

However, in the same field of endeavor Fong discloses the deficient claim limitations, as follows:

… wherein the at least one encoded video data stream is stored as a first track *[i.e. data track; Para 0007]* and the first non-audio sensor data is stored as a second track *[i.e. a global-positioning-system track; Para 0007]* that is distinct from the first track, *[i.e. an encoded video and GPS data are stored as separate tracks; Fig. 2 and associated text, Para 0007, 0015, 0019]* and …

… wherein the time-synchronizing data is used to synchronize the first track with the second track. *[i.e. as track also can contain a different timing index indicating the times for each video frame, audio frame, and storing event. ; Para 0019, GPS signal is stored in the file along with the current time and the current location.; Para 0022, received timing signals can be used for various time- sensitive applications, including time- synchronization; Para 0003]*

VanWagner discloses a camera with image sensor and GPS sensor, where captured video image is encoded using MPEG4 encoder and GPS data along with date and time data are encoded in the MPEG data stream. Fong discloses a storing the encoded video data and

GPS data along with date and time data as sperate track for video data and sperate track for GPS data, where time data may be used for synchronization, which is pertinent to the problem with which the applicant was concerned. Therefore, combining the teachings of VanWagner and Fong would provide an expected result thereby resulting in the claimed invention.

Therefore, it would have been obvious to the person of ordinary skill in the art at the time of the invention to modify the system disclosed by VanWagner add the teachings of Fong as above, in order to store information into a file as separate tracks for storage and subsequent retrieval. *[Fong: Para 0015]*

Regarding Claim 15, Note the Rejection for claim 14, wherein VanWagner further discloses

The first video camera of claim 14, further comprising: a wireless connection protocol device, *[i.e. MDRS incorporates a wireless data transceiver.; 33 Fig. 3 and associated text, Para 0023, 0027, 0071, 0074]*

wherein the processor is configured to use the wireless connection protocol device to send the at least one encoded video data stream by wireless transmission to a remote computing device *(i.e. PC)* *[i.e. wireless capability may be used to transmit video, audio, and/or position data to a remote location, MDRS is capable of sending the video/audio and other data to a PC (i.e. remote location) via a wireless communication link ; Para 0009, 0023, 0040, 0066, 0079, 0092]*

Regarding Claim 16, Note the Rejection for claim 14, wherein VanWagner further discloses

The first video camera of claim 14, further comprising: a data storage medium, wherein the processor is configured to store the at least one encoded video

Application/Control Number: 17/937,753                                                                Page 17
Art Unit: 2488

data stream on the data storage medium as a file. *[i.e. MPEG compressed audio/video stream is stored in the SDRAM 24 in MPEG file format; Para 0068, 0070]*

Regarding Claim 18, Note the Rejection for claim 17, wherein VanWagner further discloses

The first video camera of claim 17, further comprising: a display, wherein the processor is configured to cause the display to show the first image data. *[i.e. A small LCD screen on the back of the MDRS displays what is being captured by the video recorder; Fig. 1A, B and associated text, Para 0020, 0022, 0064]*

Regarding claim 21, VanWagner and Fong meets the claim limitations as set forth in claim 14.

The first video camera of claim 18, wherein the at least one non-audio data sensor is a GPS receiver. *[Please, refer to mapping, explanation and pertinence of prior art reference given in claim 14; Note: current claim may contain different terminology or additional claim terms compared to the claim(s) that are referred claim(s) to meet the claim limitations of current claim. However, explanation and pertinence of prior art of reference provided in the referred claim(s) would address any differing claim limitations. Therefore, explanation and pertinence of prior art of reference are not duplicated, and applicant is requested to refer to explanation and pertinence of prior art reference provided in the referred claim(s).]*

Regarding Claim 19, Note the Rejection for claim 21, wherein VanWagner further discloses

The first video camera of claim 21, further comprising:

a microphone; *[i.e. MDRS includes a microphone 2; 2 Fig. 1A, B, Para 0022]* and

Application/Control Number: 17/937,753                                          Page 18
Art Unit: 2488

an audio encoder, wherein the microphone is configured to produce audio

data, wherein the audio encoder is configured to produce an encoded audio data

stream from the audio data, *[i.e. Audio ADC is fed into an encoding device 23 and*

*Compressed audio is also multiplexed; Para 0068, an audio stream encoded by an audio codec 34;*

*Para 0071]*

Regarding Claim 20, Note the Rejection for claim 21, wherein VanWagner further discloses

The first video camera of claim 19,further comprising: a switch activator, *[i.e.*

*MDRS includes an On/Hold/Off switch 5; Fig. 1A,B and associated text, Para 0024]*

wherein the switch activator activates the first video camera. *[i.e. The camera starts*

*recording when the On/Hold/Off switch 5 is placed into the "On" position; Fig. 1A,B and*

*associated text, Para 0064]*

Regarding claim 27, VanWagner and Fong meets the claim limitations as set forth in claim

14-15.

The first video camera of claim 15, further comprising: a wireless connection

protocol device, wherein the processor is configured to use the wireless connection

protocol device to send the combined video stream by wireless transmission to a

remote computing device. *[Please, refer to mapping, explanation and pertinence of prior art*

*reference given in claim 14-15; Note: current claim may contain different terminology or additional*

*claim terms compared to the claim(s) that are referred claim(s) to meet the claim limitations of*

*current claim. However, explanation and pertinence of prior art of reference provided in the referred*

*claim(s) would address any differing claim limitations. Therefore, explanation and pertinence of prior*

Application/Control Number: 17/937,753                                                    Page 19
Art Unit: 2488

*art of reference are not duplicated, and applicant is requested to refer to explanation and pertinence*

*of prior art reference provided in the referred claim(s).]*

Regarding claim 29-31, 33-36, and 43, the claim(s) recites analogous limitations to claim 14-16, 18-20 and 14 above, respectively, and is/are therefore rejected on the same premise. Therefore, regarding claim 29-31, 33-36, and 43, VanWagner and Fong meet the claim limitations as set forth in claim 14-16, 18-20 and 14, respectively. *[Please, refer to mapping, explanation and pertinence of prior art reference given in claim 14-16, 18-20 and 14, respectively; Note: current claim may contain different terminology or additional claim terms compared to the claim(s) that are referred claim(s) to meet the claim limitations of current claim. However, explanation and pertinence of prior art of reference provided in the referred claim(s) would address any differing claim limitations. Therefore, explanation and pertinence of prior art of reference are not duplicated, and applicant is requested to refer to explanation and pertinence of prior art reference provided in the referred claim(s).]*

[11]    Claim 17, 28, 32, 42 is/are rejected under 35 U.S.C. 103 as being unpatentable over VanWagner (US20050078195A1) (hereinafter VanWagner) and further in view of Fong et al. (US20070255496A1) (hereinafter Fong) and further in view of Boland et al. (US20100118158A1) (hereinafter Boland).

Regarding Claim 17, Note the Rejection for claim 14-16, wherein VanWagner further discloses

The first video camera of claim 14, further comprising: a wireless connection

protocol device;  wherein the processor is configured to use the wireless connection

protocol device to send the at least one encoded video data stream by wireless

transmission to a remote computing device, *[Please, refer to mapping, explanation and*

*pertinence of prior art reference given in claim 14-18 and 14, respectively;]* …

~~wherein the remote computing device is connected to a data storage medium,~~

~~and wherein the remote computing device is configured to store the at least one~~

~~encoded video data stream on the data storage medium as a file.~~

VanWagner and Fong do not explicitly disclose the following claim  limitations:

… wherein the remote computing device is connected to a data storage

medium, and wherein the remote computing device is configured to store the at least

one encoded video data stream on the data storage medium as a file.

However, in the same field of endeavor Boland discloses the deficient claim  limitations, as

follows:

… wherein the remote computing device *[i.e. personal computing  (PC) platform*

*325; 325 Fig. 3A, Para 0082]*  is connected to a data storage medium, and wherein the

remote computing device is configured to store the at least one encoded video data

stream on the data storage medium as a file. *[i.e. encoded  video data is transferred via*

*wireless communication  line and stored to PC; Fig. 3A and associated  text, Para 0074-0076,*

*0082, upload a selected video clip file 231 to a remote data repository; Para 0059]*

VanWagner discloses transmitting transmit video, audio, and/or position data to a remote

location that is PC. Boland discloses transmitting an encoded video data to a remote location

(i.e. PC) and storing the received data at the remote location (i.e.  PC), which is pertinent to

the problem with which the applicant was concerned. Therefore, combining the teachings of

Application/Control Number: 17/937,753                                                    Page 21
Art Unit: 2488

VanWagner, Fong and Boland would provide an expected result thereby resulting in the claimed invention.

Therefore, it would have been obvious to the person of ordinary skill in the art at the time of the invention to modify the system disclosed by VanWagner and Fong add the teachings of Boland as above, in order to store received data at the remote location (i.e. PC). *[Boland: Para 0082]*

Regarding Claim 28, Note the Rejection for claim 14 and 17, wherein Boland further discloses

> The first video camera of claim 21, wherein at least one second video camera is configured to produce second image data *(i.e. 220 or 221, Fig. 2C)* , wherein the processor is configured to: receive the second image data from the at least one second video camera, and communicate at least part of the second image data to the memory. *[i.e. receiving a video control command 218, between the wide angle image signal 221 and the zoom image signal 219 to output an encoded video stream 296 at only at a particular zoom to be stored to the storage medium 228.; Para 0057]*

Regarding claim 32 and 42, the claim(s) recites analogous limitations to claim 17 and 28 above, respectively, and is/are therefore rejected on the same premise. Therefore, regarding claim 32 and 42, VanWagner, Fong and Boland meet the claim limitations as set forth in claim 17 and 28, respectively. *[Please, refer to mapping, explanation and pertinence of prior art reference given in claim 17 and 28, respectively; Note: current claim may contain different terminology or additional claim terms compared to the claim(s) that are referred claim(s) to meet the claim limitations of current claim. However, explanation and pertinence of prior art of reference provided in the referred claim(s) would address*

Application/Control Number: 17/937,753                                                                     Page 22
Art Unit: 2488

*any differing claim limitations. Therefore, explanation and pertinence of prior art of reference are not duplicated, and applicant is requested to refer to explanation and pertinence of prior art reference provided in the referred claim(s).]*

# *Contact Information*

[12]    Any inquiry concerning this communication or earlier communications from the examiner should be directed to EXAMINER, DAKSHESH PARIKH, whose telephone number is (571) 272-2777.  The examiner can normally be reached on EXAMINER SCHEDULE.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, Applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, SPE, SATH V. PERUNGAVOOR, can be reached on (571) 272-7455.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/DAKSHESH D PARIKH/
Primary Examiner, Art Unit 2488

| | | Application/Control No. 17/937,753 | Applicant(s)/Patent Under Reexamination O'Donnell et al. | |
|---|---|---|---|---|
| ***Notice of References Cited*** | | Examiner DAKSHESH D PARIKH | Art Unit 2488 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date YYYY-MM-DD | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20100118158-A1 | 2010-05-13 | Boland; Justin | H04N23/63 | 348/376 |
| * | B | US-20070255496-A1 | 2007-11-01 | Fong; Chee Keat | G01S19/42 | 701/469 |
| * | C | US-20050078195-A1 | 2005-04-14 | VanWagner, Craig K. | H04N21/41407 | 348/E7.071 |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date YYYY-MM-DD | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in YYYY-MM-DD format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office

PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20240321