## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

CONTOUR IP HOLDING, LLC,

        *Plaintiff*,

    vs.

ARASHI VISION INC., D/B/A INSTA360,

        *Defendant*.

CASE NO.:   4:25-CV-01369

JURY TRIAL DEMANDED

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM

Plaintiff Contour IP Holding, LLC ("Plaintiff" or "Contour"), respectfully submits this opposition to Defendant Arashi Vision Inc., d/b/a Insta360's ("Defendant" or "Insta360") Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim filed on July 21, 2026 [Dkt. 9] (the "Motion").[1]

## I.      INTRODUCTION

Claim 1 of the '983 Patent is directed to an improved camera containing, among other things, at least one non-audio sensor, and a processor allowing for the combination of video and non-audio sensor data into one combined video stream. *See e.g.,* '983 Pat. at Claim 1. The specification of the '983 Patent expressly teaches that this advancement over then-existing camera technology "introduce[d] a new level of context to any video, making location, speed, time, and outside world conditions as important as the scene recorded." *Id.* at Col. 1:64-67. As one example, the '983 Patent's inventive camera allowed a user to watch an epic run down any mountain while tracking progress, speed, and elevation on a map, functionality that did not exist in prior-art cameras. *Id.* at Col. 2:2-4. As mentioned above and discussed further below, claim 1 of the '983 Patent expressly captures this disclosed advancement over the prior art and is therefore patent eligible. At a minimum, Insta360 cannot carry its substantial burden to show that the claim, when taken as an ordered combination, recites nothing more than well understood, routine, and conventional activities in the camera industry.

Insta360's assertions to the contrary are not only conclusory but fail to adequately consider claim 1 in light of the teachings of the '983 Patent, leading it to improperly overgeneralize the claimed invention and omit elements of the claim. Insta360's failure to read claim 1 in the context

---

[1] Contour concurrently files with this opposition, a notice of dismissal of the claim for infringement of U.S. Patent No. 8,890,954 (the "'954 Patent"). Accordingly, Contour does not address the substance of Insta360's arguments related to the '954 Patent.

of the specification leads it to incorrectly conclude what the claim is "directed to." Moreover, as mentioned above, Insta360 cannot meet its high burden of clear and convincing evidence to show that claim 1 fails to include an inventive step. For these reasons, and those discussed below, Insta360's motion to dismiss must be denied.

## II.        LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a court must dismiss a complaint that does not state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under Fed. R. Civ. P. 8(a), a complaint states a cognizable claim when it includes a "short and plain statement of the claim showing that the pleader is entitled to relief." A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The court must accept all well-pleaded facts as true, and view the facts in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

A U.S. patent is presumed valid pursuant to 35 U.S.C. § 282(a), and the defendant has the burden of establishing invalidity by clear and convincing evidence under Section 101. *Microsoft Corp. v. i4i Ltd. P'ship,*, 564 U.S. 91, 95 (2011); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (rejecting the district court's conclusion that patents were presumed valid but not presumed patent eligible). To defeat the presumption of validity, "the only plausible reading of the patent must be that there is clear and convincing evidence of ineligibility." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013) (emphasis in original), *vacated on other grounds*, 573 U.S. 942. Due to this heightened burden, the Federal Circuit has repeatedly held that "dismissal for lack of eligible subject matter will be the exception, not the rule." *Id.*

2

Under *Alice Corp. Pty. v. CLS Bank Int'l*, in step one, courts must "determine whether the claims at issue are directed to a patent-ineligible concept." 573 U.S. 208, 217–218 (2014). The court is required to "articulate with specificity what the claims are directed to and ask whether the claims are directed to an improvement to . . . functionality versus being directed to an abstract idea." *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1258 (Fed. Cir. 2017). A court must be careful not to over-generalize a patent's claims because "[a]t some level, 'all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice Corp. Pty.*, 573 U.S. at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)). The court must "look to whether the claims are directed to 'a specific means or method that improves the relevant technology' rather than simply being directed to 'a result or effect that itself is the abstract idea.'" *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024) (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). If the court determines the concept is directed to a nonabstract idea, the analysis can stop at step one. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016) ("Because the claims are not directed to an abstract idea under step one of the *Alice* analysis, we do not need to proceed to step two of that analysis.").

Even if the concept is determined to be abstract, the patent can still be patent eligible if it supplies an inventive concept. Under step two, courts "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id* at 1334 (internal quotation marks and citations). Even if each claim element, by itself, was known in the art, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT & T Mobility LLC*, 827 F.3d 1341,

3

1351 (Fed. Cir. 2016). Whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination and goes beyond what was simply known in the prior art. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The mere fact that "something is disclosed in a piece of prior art, for example, does not mean it was well understood, routine, and conventional." *Id.* Indeed, "inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act." *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010).

## III.   ARGUMENT

### A.   Contour Does Not Assert that Claim 1 is Representative

Insta360 wrongly asserts that the Contour identifies claim 1 as representative of all claims of the '983 Patent. It did not. Insta360 bases this incorrect conclusion on the fact that Contour's well plead complaint asserts "at least claim 1." But at no point does Contour suggest that claim 1 is representative of all claims of the '983 Patent. While each of the claims of the '983 Patent contain or are dependent on a claim that incorporates the disclosed advancement over the prior art, namely, a camera containing, among other things, at least one non-audio sensor and a processor that can combine video and non-audio sensor data into one video stream, the other claims of the '983 Patent include further improvements over the prior art beyond what is stated in claim 1. For example, in claim 5 there is a further requirement that the camera in claim 1 has a processor that has a second computing device operating as a post-processor which "receives the combined video stream and associates one or more event categories with the combined video stream based on the content of the combined video stream." '983 Patent at claim 5; Col. 27:60 – 28:17. Further, claim 7 expressly requires that "the at least one non-audio data sensor is a GPS receiver," expressly

4

tracking the disclosed advancement described by the specification. *See e.g., Id.* at claim 7; Col. 1:62-67 ("[t]he GPS receiver enables periodic capture of location once every few seconds with near pinpoint accuracy to bring together video and mapping. The inclusion of GPS technology introduces a new level of context to any video, making location, speed, time, and outside world conditions as important as the scene recorded."). Because these additional express improvements over the prior art are included in other claims, Insta360 fails to carry its burden to show all claims of the '983 Patent are represented by claim 1. *CXT Sys., Inc. v. Academy, Ltd.*, No. 2:18-cv-00171-RWS-RSP, 2019 WL 1237148 at *4 (E.D.Tex. Mar. 12, 2019) ("When the movant relies on a representative claim in its § 101 analysis, it bears the burden of showing that the other asserted claims are substantially similar and linked to the same abstract idea.") (quoting references omitted). Because Insta360 fails to adequately analyze claims other than claim 1, this response focuses on claim 1.

### B.    Claim 1 of the '983 Patent is Directed to Patent-Eligible Subject Matter

The *Alice* inquiry should begin and end with step 1 because claim 1 is directed to an advancement of over prior art video cameras and not simply an abstract idea.[2] *See TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (internal quotation marks and citations omitted) (considering under step 1"what the patent asserts to be the focus of the claimed advance over the prior art."). Here, claim 1 is directed to a specific means that improves then-existing camera technology, namely, a camera containing, among other things, at least one non-audio sensor and a processor that allows video and non-audio data to be combined into a single stream. *See* '983 Patent at Claim 1. The Federal Circuit has repeatedly held the improvements of systems are nonabstract, particularly in circumstances where data was utilized in a particular manner along

---

[2] Should the Court find that claim 1 is representative, Contour respectfully requests the right to supplement its briefing to address the additional claims to provide a full analysis under *Alice*.

with specific configuration of components. *See e.g., Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1349 (Fed. Cir. 2017) (finding non abstract "claims [that] specify a particular configuration of [] sensors and a particular method of using the raw data from the sensors in order to more accurately calculate the position and orientation of an object on a moving platform."); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018) ("Like the improved systems claimed in *Enfish*, *Thales*, *Visual Memory*, and *Finjan*, these claims recite a specific improvement over prior systems, resulting in an improved user interface for electronic devices."). Here, the '983 specification expressly describes the addition of a non-audio sensor along with the combination of non-audio sensor data with video into a single stream as the advancement over the prior art. Specifically, the specification states that "[t]he inclusion of GPS technology introduces a new level of context to any video, making location, speed, time and outside world conditions as important as the scene recorded." '983 Pat. at Col. 1:64-67. And an exemplary result of the claimed invention is that users "can watch an epic run down any mountain while tracking progress, speed, and elevation on a map." *Id.* at Col. 2:2-4. As the specification makes clear, claim 1 is directed to an improved camera, not an information-management idea as Insta360 incorrectly contends.[3] *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346 (Fed. Cir. 2019) ("The specification is helpful in illuminating what a claim is directed to.") (cleaned up).

Insta360 ignores the express teachings of the '983 Patent and instead manufacturers its contention that claim 1 is directed to information management. But it fails to cite to any portion of the '983 specification in its analysis of what claim 1 is "directed to." Instead, Insta360 relies heavily on *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359 (Fed. Cir. 2024), *cert. denied,*

---

[3] Information management is not even a concept discussed in the '983 Patent.

145 S. Ct. 1924, 221 L. Ed. 2d 664 (2025) to allege that claim 1 is directed to an abstract idea. But unlike *Broadband iTV*, the claims here are not directed to or analogous to "receiving metadata and organizing the display of video content based on that metadata." *Id.* at 13. Here, claim 1 of the '983 Patent is directed to an improved camera technology including additional hardware and functionality that was not well known in the industry and that ultimately provide users with video and additional context relating to the video that previous cameras did not provide. *See e.g.,* '983 Patent at claim 1; Col. 1:47 – Col. 2:7. Contrary to Insta360's assertion, claim 1 of the '983 Patent is nothing like the claim in *Broadband iTV*.

The '983 Patent's specification confirms that claim 1 is directed to a specific camera implementation to solve the particular problem of adding additional action-related information to video that existed in the action camera arts. Claim 1 is therefore patent eligible. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016) ("Rather, the claims are directed to a specific implementation of a solution to a problem in the [camera] arts. Accordingly, we find the claims at issue are not directed to an abstract idea.").

### C.    The Elements of Claim 1 Supply an Inventive Concept

Only if the Court finds claim 1 of the '983 Patent abstract does it need to evaluate the claim under the second step of *Alice*. As claim 1 is not directed to an abstract idea, analysis under step 2 of *Alice* is not required. *See e.g. LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1316 (Fed. Cir. 2016) ("Because we find that claim 1 is not directed to ineligible subject matter, we do not reach Alice step two.").

Under step two, however, claim 1 of the '983 Patent provides for more than the mere performance of well understood, routine and conventional activities known in the action camera industry. As discussed above, claim 1 requires the addition of a non-audio sensor and a processor

capable of combining the video and non-audio sensor data into a single steam. As expressly discussed in the '983 Patent's specification, this novel combination of hardware and functionality provided a new level of context not previously available in first-person video cameras. '983 Pat. at Col. 1:64-67. Because this express improvement is incorporated into claim 1, at a minimum, a fact issue exists whether claim 1 satisfies step two of the *Alice* framework. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) ("The improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine and conventional activities…"). Accordingly, Insta360's motion should be denied.

Further, Insta360 cannot meet its clear and convincing burden to show that the limitations of claim 1, when considered individually or as an ordered combination, involve only the performance of well understood, routine, and conventional activities previously known in the action camera industry. *Id.* at 1368 ("The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence."). Insta360 relies solely on the examiner's rejection, under 35 U.S.C. § 103, of a different claim during prosecution in support of its assertion that claim 1 provides only well-known, routine and conventional elements. *See* Mot. at 12-13. But the mere fact that individual elements of the claim were disclosed in different pieces of prior art is insufficient to meet Defendant's burden to show that such elements, let alone that the ordered combination of elements, were well-understood, routine and conventional. *Berkheimer*, 881 F.3d at 1369 ("The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine and conventional."). Indeed, even if the individual elements

were well understood, routine and convention—Insta360 has made no such showing—that alone does not prohibit a finding that claim 1 provides an inventive step. As the Federal Circuit determined in *Bascom Global Internet Services v. AT&T Mobility*, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." 827 F.3d 1341, 1350 (Fed. Cir. 2016). In *Bascom*, the relevant claim was determined to be directed to the idea of filtering content and the claim included a combination of filtering mechanisms known in the art. *See id.* at 1343–1344. Yet, the Court found that the relevant claims did not recite merely conventional or generic filtering processes, and relied on the patent's description that the particular arrangement of elements was a technical improvement over the prior art. *Id.* at 1350. Here too, the '983 Patent expressly describes the advancement of action camera technology through the inclusion of a non-audio sensor and processor capable of combining the non-audio and video data into a single stream. '983 Pat. at Col 1:64-67. And further, while Insta360 relies on the examiner's comments regarding a different claim, it ignored the **express** statements of the examiner with respect to what actually issued as claim 1. Specifically, examiner stated that "[f]eatures of independent claim 14, 29 and 43 are found or suggested in different prior arts as shown above, however there is no strong motivation or reasoning found at the time of the invention to combine all prior art references or modify the teachings of the prior arts of references to arrive at the claimed invention, either singularly or in combination." '983 Patent, Notice of Allowance at 3 (*see* Ex. 1 attached hereto). Beyond its misplaced reliance on the prosecution history on an incorrect claim, Insta360 provides no evidence that the ordered combination of elements of claim 1 were well-understood, routine and conventional, let alone clear and convincing evidence. The Court, therefore, should deny its Motion.

9

### D.    Amendment for Leave Should be Given Freely

The court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). For the reasons stated above, amendment to add additional claims and factual allegations from the '983 Patent is not futile. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126–1127 (Fed. Cir. 2018) (finding abuse of discretion in denying leave to amend following a finding of invalidity on a claim under § 101 when the patentee could allege additional facts that claims contain an inventive concept).

## IV.    CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Complaint for Failure to State a Claim should be denied.

Dated: August 4, 2026

Respectfully submitted,

*/s/ Gary R. Sorden*
Gary R. Sorden
Texas Bar No. 24066124
gsorden@coleschotz.com
COLE SCHOTZ, P.C.
901 Main Street, Suite 4120
Dallas, Texas 75202
Tel: (469) 557-9390
Fax: (469) 533-1587

**ATTORNEY FOR PLAINTIFF**
**CONTOUR IP HOLDING, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service were served with a copy of this document on August 4, 2026, via the Court's ECF system.

*/s/ Gary R. Sorden*
Gary R. Sorden

11