**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **CONTOUR IP HOLDING, LLC** | |
| ***Plaintiff*,** | **Case No. 4:25-cv-01369-SDJ** |
| **v.** | |
| **ARASHI VISION INC., D/B/A INSTA360** | **JURY TRIAL DEMANDED** |
| ***Defendant*.** | |

**DEFENDANT INSTA360'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

In response to Insta360's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 21), Contour's Opposition defends claim 1 of U.S. Patent No. 12,206,983 (the "'983 patent") by repeatedly labeling the invention as an "improved camera." Dkt. 22. However, Contour completely ignores Insta360's primary authority on point: the Federal Circuit's recent decision in *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1066 (Fed. Cir. 2026), which held an information-presenting patent is ineligible under § 101 for failure to disclose "specific data structures." Instead, Contour's asserted benefit of providing a video with additional "context" describes only the informational value of the resulting video, not a technological improvement in the operation of the claimed components.

Contour's remaining arguments do not change that conclusion. Merely labeling the claimed arrangement unconventional does not create a factual dispute when neither the claim nor the specification identifies a specific inventive implementation. The prosecution history reinforces Insta360's position. It shows that pending application claim 14 was the earlier version of issued claim 1; that the examiner mapped every pre-amendment limitation to known technology and officially noticed that separate MPEG tracks and time synchronization were well known; and that the later-added wireless-transmission limitation likewise used conventional wireless and remote-storage functions. Contour's reliance on the Notice of Allowance addresses the distinct question under § 103 of whether there was sufficient motivation to combine references, not whether claim 1 supplies an inventive concept under § 101. The Motion to Dismiss the First Amended Complaint should be granted.

## II. ARGUMENT

### A. Contour Does Not Address *GoTV* Because It Cannot Supply the Claimed Technological Implementation that *GoTV* Requires.

In its Motion to Dismiss, Insta360 expressly and repeatedly relied on *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053 (Fed. Cir. 2026) to explain why naming two data "tracks" and requiring their synchronization does not supply a concrete technological implementation. Dkt. 21 at 8-10, 13. Contour's response completely ignores that case because it cannot reconcile its eligibility theory with that decision.

Instead of distinguishing *GoTV*, Contour attempts to evade it by a footnote accusing Insta360 of "ignor[ing] the express teachings of the '983 Patent." Dkt. 22 at 8 n.4. That accusation is demonstrably false. Insta360's Motion expressly analyzes the disclosed MPEG tracks, text tracks, and timestamp alternatives—and explains why those unclaimed implementation details cannot save claim 1. Dkt. 21 at 10; *GoTV*, 166 F.4th at 1061 ("[O]nly features that are claimed, *not unclaimed details that appear in the specification*, can supply something beyond ineligible matter.") (emphasis added).

Citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), Contour argues "the claims are directed to a specific implementation of a solution to a problem." Dkt. 22 at 8. However, *Enfish* exposes, rather than cures, the ineligibility of the '983 patent. The patent claims in *Enfish* required a specific data structure: a logic data table having rows that define columns within the same self-referential table. 822 F.3d at 1330-33. That relationship explained how the database operated differently from conventional data tables. *Id.* at 1337. Contour identifies no comparable structure or process. It simply borrows *Enfish*'s conclusion and substitutes "[camera]" for software in the quotation. Changing the noun cannot supply the missing limitation. Dkt. 22 at 8.

Instead of directly addressing *GoTV*, Contour repeats that adding sensor data gives video "additional context." Dkt. 22 at 5-9. That is the informational benefit of the claimed result—not an answer to the missing means of achieving it. Even accepting those assertions, Contour still identifies no inventive implementation beyond collecting, combining, and synchronizing the information itself. Contour explains why users might want the result. It never identifies the claimed technological means that make the result patent-eligible. Its silence on *GoTV* reflects that substantive failure.

**B. Claim 1 Contains No Inventive Concept, and the Prosecution History Confirms Why.**

The prosecution history reinforces the eligibility analysis. The March 27, 2024 Office Action addressed pending claim 14, the direct predecessor of issued claim 1. Contour mischaracterizes claim 14 as a "different" and "incorrect" claim. Dkt. 22 at 10. That is simply untrue. The USPTO's Corrected Notice of Allowability dated October 10, 2024 lists claim 14 as allowed and explicitly maps "Final" claim 1 directly to "Original" claim 14. Ex. 1 at 7–8. It follows that the original claim 14 *is* issued claim 1 as it evolved through prosecution, and the examiner's rejection of that pre-amendment version of that claim remains intrinsic evidence that binds Contour and defeats its § 101 defense.

The prosecution history confirms that '983 claims are entirely conventional. The March 27, 2024 Office Action maps the camera, lens, image sensor, non-audio/GPS sensor, processor, encoder, memory, receipt of both data types, video encoding, data combination, separate-track storage, and time synchronization to known technology. Dkt. 21-2 at 11-16. The examiner then states: "Examiner takes Official notice that MPEG data stream stored in a file having sperate[sic] video track, audio track and overlay track are well known to the person of ordinary skill in the art and defined in the MPEG standers[sic] documents." *Id.* at 14-15. Under the Manual of Patent

Examining Procedure, taking Official Notice carries an exceptionally high threshold: it is reserved strictly for facts so ubiquitous, undeniable, and deeply embedded in common knowledge as to "defy dispute." MPEP § 2144.03 (9th ed., Rev. 01.2024) ("Official notice unsupported by documentary evidence may be taken by the examiner where the facts asserted to be well-known, or to be common knowledge in the art, are 'capable of such instant and unquestionable demonstration as to defy dispute.'") (quoting *In re Ahlert*, 424 F.2d 1088, 1091 (C.C.P.A. 1970)). The prosecution history thus shows more than, as Contour characterizes it, that the "individual elements of the claim were disclosed in different pieces of prior art." Dkt. 22 at 10. It reflects the examiner's express finding that key components and implementation details of original claim 14 were well known. Dkt. 21-2 at 14–15.

Contour's quoted allowance rationale, that the references lacked sufficient motivation or reasoning to combine their teachings, addresses obviousness under § 103, not eligibility under § 101. Dkt. 22 at 11. As the Federal Circuit has held, "a patent examiner's consideration of Section 101 issues does not 'in any way shield the patent's claims from Article III review for patent eligibility.'" *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1359 (Fed. Cir. 2024) (quoting *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1183 (Fed. Cir. 2020)). If an examiner's consideration of Section 101 issues cannot shield a claim against an eligibility challenge, an examiner's Section 103 analysis certainly cannot do so. After all, patent eligibility and nonobviousness are fundamental, distinct legal inquiries. *See Diamond v. Diehr*, 450 U.S. 175, 188–91 (1981). Indeed, the quoted language from the Notice of Allowance confirms that each individual feature was already conventional in the prior art. It identifies no inventive architecture or new technique arising from their sequence.

### C. Contour's Conclusory Allegations Do Not Raise a Factual Dispute.

Contour cannot avoid dismissal merely by characterizing inventiveness as factually disputed. Relying on *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018), Contour alleges that "because this express improvement is incorporated into claim 1, at a minimum, a fact issue exists whether claim 1 satisfies step two of the Alice framework." Dkt. 22 at 9. Although the Court must accept well-pleaded facts as true, it need not accept conclusory assertions of inventiveness. *IBM Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022) ("We have said that 'we do not read *Aatrix* to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss.'") (quoting *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019)).

Federal Circuit precedent confirms the conclusory nature of Contour's allegations. While the FAC details shortcomings of earlier POV cameras and asserts novel sensor-and-video functionality (FAC ¶¶ 14–17), the patentee in *Beteiro* made an identical argument alleging that using GPS to process mobile wagers was years ahead of industry practice. *Beteiro*, 104 F.4th at 1358-59. The Federal Circuit affirmed dismissal nonetheless, holding that the specification described conventional GPS use and supplied no technological implementation to back its asserted unconventionality. *Id.* Here, even crediting Contour's asserted new functionality, the allegations describe the benefits of combining sensor data with video without explaining what makes the claimed combination technologically unconventional. Alleging that the resulting information was new does not supply the missing inventive concept. *See Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017) ("Eligibility and novelty are separate inquiries."). Under *IBM* and *Beteiro*, such conclusory factual assertions do not preclude dismissal under Rule 12(b)(6).

**D. Contour's Remaining Arguments Fail Too.**

Contour's attempt to distinguish *Yu* and *Broadband iTV* is also misplaced. In *Yu v. Apple*, although the patentee asserts improved camera functionality, the claim recites components performing their basic functions at a high level of generality to achieve the abstract result of enhancing one image with another. 1 F.4th 1040, 1043–45 (Fed. Cir. 2021); *see In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) ("[T]he recited physical components merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner."). Here, Contour identifies the addition of non-audio sensors and the combination of their output with video as the technological advance, but explains that advance through the resulting location, speed, and other contextual information. Dkt. 22 at 6–7. This Court distinguishes claims directed to "a specific means or method that improves the relevant technology" from those directed to "a result or effect that itself is abstract idea and merely invoke generic processes and machinery." *AML IP, LLC v. Bath & Body Works Direct, Inc.*, No. 4:22-CV-216-SDJ, 2024 U.S. Dist. LEXIS 143729, at *13-14 (E.D. Tex. Aug. 13, 2024). Claim 1 here specifies what information is collected and associated without identifying a particular technique that improves capture, processing, or synchronization. Thus, Contour's characterization does not alter the conclusion that the claimed advance concerns the information accompanying the video, rather than the technology used to produce it. *See AML IP*, 2024 U.S. Dist. LEXIS 143729, at *20-21 ("While the patent may make online transactions (an abstract idea) more efficient or more convenient, it does so not through a 'specific asserted improvement in computer capabilities,' but merely by invoking a bridge computer (pre-existing technology) 'as a tool.'"). *Id.* at 20.

Similarly, Contour's attempt to distinguish *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359 (Fed. Cir. 2024), relying on the assertion that claim 1 includes "additional hardware"

and is not directed to "receiving metadata and organizing the display of video content based on that metadata," is therefore also misplaced. Dkt. 22 at 6-7; *see Yu*, 1 F.4th at 1045 ("the claimed configuration does not add sufficient substance to the underlying abstract idea of enhancement—the generic hardware limitations of claim 1 merely serve as 'a conduit of the abstract idea.'").

The Federal Circuit has found claims with the following characteristics to be directed to abstract ideas: (1) claims that can be distilled to some process of collecting, manipulating, distributing, and displaying data; (2) claims that merely add a general computer to a mathematical or conventional process; and (3) claims that fail to clearly delineate what improvement they make to the functioning of computers or computer systems. *Scale Video Coding LLC v. Cisco Sys., Inc.*, No. 4:23-CV-803-SDJ, 2025 U.S. Dist. LEXIS 62844, at *17-18 (E.D. Tex. Apr. 2, 2025); *see, e.g.*, *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 903 (Fed. Cir. 2020) (finding claims related to merely collecting, manipulating, distributing, and displaying data are likely directed to abstract ideas); *Two-Way Media*, 874 F.3d at 1338 (finding claims that fail to tie the claimed method to a concrete improvement in computers or computer functioning are likely to be abstract); *AML IP*, 2024 U.S. Dist. LEXIS 143729, at *20-21 (finding claims abstract where the computer served as a tool to make transactions more efficient or convenient without improving computer capabilities). Moreover, the Federal Circuit has rejected functional synchronization limitations as insignificant post-solution activity when the claims do not provide "any instruction on how to perform the synchronization outside 'the addition of conventional computer components.'" *IBM*, 50 F.4th at 1379. Here, Contour identifies in claim 1 neither an improved data structure nor a specific technique for performing the synchronization.

### E. Claim 1 Is the Only ’983 Patent Claim Pleaded—and Contour Pleaded It as Representative.

Contour states it never identified claim 1 as representative. Dkt. 22 at 4. Yet FAC ¶ 10 expressly calls it “a representative example of the claims asserted in the ’983 Patent.” It then reproduces only claim 1 and pleads infringement of “at least claim 1,” without identifying another ’983 claim or alleging how any other claim is infringed. FAC ¶¶ 11-12, 62-70. The Court thus needs to decide eligibility only for claim 1. *See Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*, No. 4:20-CV-448-SDJ, 2021 WL 1196271, at *9 n.3 (E.D. Tex. Mar. 30, 2021), *aff’d*, No. 2021-1906, 2022 WL 794981 (Fed. Cir. Mar. 15, 2022) (declining to address representativeness where all infringement allegations referred only to claim 1).

Even under the representative-claim standard Contour invokes through *CXT*, the relevant inquiry is whether the other asserted claims materially affect eligibility. Dkt. 22 at 5; *see CXT Sys., Inc. v. Academy, Ltd.*, Case No. 2:18-cv-00171-RWS-RSP, 2019 WL 1237148, at *4 (E.D. Tex. Mar. 12, 2019). Here, Contour asserts no other claim of the ’983 Patent in its FAC. In addition, in its Motion to Dismiss, Insta360 separately analyzes the other dependent claims and notes that they “merely add conventional data source, storage destination, display, input, transmission, post-processing, or other routine implementation detail,” none of which affects the eligibility analysis or distinguishes those claims from the same abstract idea underlying claim 1. Dkt. 21 at 16-17. Contour identifies claims 5 and 7 in its Opposition, but neither cures the defect. Dkt. 22 at 4-5. Claim 5 adds generic remote post-processing and content classification, while claim 7 narrows the generic non-audio sensor to GPS, a conventional feature that does not change claim 1’s focus.

### F. Contour Identifies No Amendment That Could Cure the Defect.

Contour requests leave to add claims and patent-based factual allegations. Dkt. 22 at 11. That general request identifies no cure. *Aatrix* requires credit only for properly pleaded, plausible

allegations tied to the claims and specification. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126-28 (Fed. Cir. 2018). Here, Contour offers no proposed pleading or fact that would alter claim 1's language or focus. No amendment can rewrite the issued claim. *See Beteiro*, 104 F.4th at 1359 (intrinsic record showed that "no amount of creative pleading" could establish eligibility). Dismissal with prejudice is appropriate. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

## III. CONCLUSION

Insta360 respectfully requests that the Court grant its motion and dismiss the First Amended Complaint with prejudice.

September 15, 2026

Respectfully submitted,

By: /s/ J. Benjamin Bai

J. Benjamin Bai
Texas Bar No. 24001675
**King & Wood LLP**
500 Fifth Avenue, 50th Floor
New York, NY 10110
Telephone: (212) 319-4755
Email: benjamin.bai@cn.kingandwood.com

Yang Guo
New York Bar No. 5897251
**King & Wood**
17th Floor, One ICC, Shanghai ICC
999 Middle Huai Hai Road, Xuhui District
Shanghai 200031, China
Telephone: (628) 999-0922
Email: guoyang5@cn.kingandwood.com

Haolu Feng
D.C. Bar No. 90001026
**King & Wood**
17th Floor, One ICC, Shanghai ICC
999 Middle Huai Hai Road, Xuhui District
Shanghai 200031, China
Telephone: (206) 499-2956
Email: harry.feng@cn.kingandwood.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 15, 2026, a true and correct copy of the foregoing was electronically filed using CM/ECF, which serves electronic notice on all counsel of record and registered CM/ECF users.

By: /s/ J. Benjamin Bai